IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NICOLE B., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 4:25-cv-831-Y-BN |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

This case filed under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge Terry R. Means.

The Commissioner denied Plaintiff Nicole B.'s claim for disability insurance benefits, and Plaintiff argues that the Commissioner's decision should be reversed, and this case remanded for further proceedings, because (1) the administrative law judge ("ALJ") failed to comply with SSR 12-2p in evaluating Plaintiff's fibromyalgia and (2) the ALJ's residual functional capacity ("RFC") determination is inconsistent with the ALJ's finding that Plaintiff has a severe mental impairment. *See generally* Dkt. No. 11.

The Commissioner filed a brief in response, and Plaintiff replied. *See* Dkt. Nos. 14 & 15.

And, for the following reasons, the Court should affirm the hearing decision.

**Legal Standards**

"To qualify for Title II disability-insurance benefits, a claimant must prove a 'disability,' meaning a 'medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.'" *Hicks v. Comm'r, Soc. Sec. Admin.*, No. 24-10826, 2025 WL 1166147, at *1 (5th Cir. Apr. 22, 2025) (per curiam) (quoting *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (in turn citing 42 U.S.C. § 423(d)(1)(A))).

"The Commissioner employs a sequential, five-step inquiry to determine whether a claimant is disabled," *id.* at *2 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)), under which the considerations are:

> (1) whether the claimant is "doing substantial gainful activity;" (2) whether the claimant has "a severe medically determinable physical or mental impairment" of sufficient duration; (3) if so, whether her impairment meets or equals a listing in the regulatory appendix; (4) if not, whether the claimant can perform her "past relevant work" given her "residual functional capacity" (RFC); and (5) if not, whether the claimant can adjust to other work given her RFC, age, education, and work experience.

*Id.* at *2 n.5 (citations omitted).

"The claimant bears the burden of proof until the last step, when the burden shifts to the Commissioner." *Id.* at *2 (citing *Jones v. O'Malley*, 107 F.4th 489, 492 (5th Cir. 2024)).

And a federal court's review of the Commissioner's "determinations 'is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence.'" *Id.* (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th

Cir. 2012) (per curiam); citing 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.")).

"Substantial evidence means 'more than a scintilla, but it need not be a preponderance.'" *Id.* (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); citing *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("[Substantial evidence] means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)))).

**Analysis**

Plaintiff's first argument is that, as to her fibromyalgia, the ALJ did not properly consider the evaluating opinion of Hima Reddy, M.D., Plaintiff's treating rheumatologist.

The ALJ found that Plaintiff's severe impairments include fibromyalgia. *See* Dkt. No. 10-1 at 21. The ALJ then set out at step three that,

> [a]lthough fibromyalgia cannot meet a listing in appendix 1 because it is not a listed impairment, fibromyalgia could medically equal a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or medically equal a listing in combination with at least one other medically determinable impairment (SSR 12-2p). Nevertheless, there is no evidence that fibromyalgia medically equals a listing, either individually or in combination with another impairment.

*Id.* And, in determining the RFC, the ALJ set out that

> Himabindu Reddy, MD, the claimant's physician, submitted a "medical source statement – physical" dated March 2022 (Exhibit B4F). He noted that the claimant was incapable of even "low stress" work and would be absent more than 4 days per month (Id.). Dr. Reddy submitted a subsequent statement dated March 2024 wherein he added that the

> claimant would be limited to sitting, standing, and walking no more than 2 hours each in an 8-hour workday (Exhibit B11F/1-4). The undersigned finds these opinions unpersuasive because they are not supported by the physician's own findings on exam including positive tender points at times, some joint tenderness and swelling, and intermittent reduced range of motion, but normal gait, generally 5/5 motor strength in all extremities, intact sensation, and no focal sensorial deficits (e.g., Exhibits B2F/3, 6, 10, 14-15, 18, 36; B3F/3, 6, 10, 18, 22, 40; B9F/6, 9, 12, 15, 18, 24, 27, 32, 43, 47, 51, 62, 67, 70, 74, 77, 79, 83, 91-92, 95, 107, 110, 113). The opinion is also inconsistent with the other longitudinal physical exam findings which demonstrated similar findings (e.g., Exhibits B1F/2, 104; B5F/4-7; B7F/4, 8, 12, 42-43, 55, 58-59; B8F/4-5; B9F/21, 29, 36, 55, 58, 88; B10F/5).

*Id.* at 26-27.

According to Plaintiff, the ALJ erred by evaluating Dr. Reddy's opinion "entirely [ ] on normal physical examination findings" where, "[u]nder SSR 12-2p, once fibromyalgia is established as a medically determinable impairment, the ALJ must only 'evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work.'" Dkt. No. 15 at 1-2 (quoting SSR 12-2p, 2012 WL 3104869, at *5).

And, so, Plaintiff asserts that, "because the ALJ identified fibromyalgia as a severe impairment, SSR 12-2p instructed that he could not rely on the mere absence of objective evidence to discredit fibromyalgia-related limitations." *Id.* at 2 (citing SSR 12-2p, 2012 WL 3104869; *Arakas v. Comm'r of Soc. Sec.*, 983 F.3d 83, 97 (4th Cir. 2020)).

Plaintiff therefore alleges that the ALJ's SSR 12-2p error occurred at the RFC stage.

More commonly, an alleged error based on SSR 12-2p occurs at steps two or three, and that error can be prejudicial to the extent it then infects the next steps of

an ALJ's analysis. *See, e.g.*, *Jessica M. v. O'Malley*, No. 4:23-cv-3702, 2024 WL 4860806, at *4-*6 (S.D. Tex. Nov. 20, 2024) ("[B]y failing to properly analyze Plaintiff's fibromyalgia and finding it was not medically determinable, the ALJ foreclosed the possibility of finding it was a basis for disability at Step Three." And, "[b]y erroneously analyzing Plaintiff's fibromyalgia and subsequently finding it not medically determinable, the ALJ materially altered the rest of the disability analysis." (citations omitted)); *accord David v. Comm'r of Soc. Sec.*, No. 6:21cv288-KNM, 2022 WL 16559140, at *8-*10 (E.D. Tex. Oct. 31, 2022).

But such an error can also be harmless based on how an ALJ ultimately assesses fibromyalgia to determine the RFC:

> Here, the ALJ found Plaintiff's fibromyalgia a severe impairment at step two. Substantial evidence, including the record from Dr. Stidger, supports the ALJ's step two severity finding. As discussed above, the ALJ went on to discuss SSR 12-2p at step 3 and applied both tests.
>
> Importantly, as pointed out by the Magistrate Judge, the ALJ also accounted for Plaintiff's fibromyalgia and associated limitations in his RFC analysis. Therefore, to the extent the ALJ made any error in his initial analysis of Plaintiff's fibromyalgia at step three, it would be harmless. The ALJ's RFC assessment incorporated limitations related to lifting, carrying, standing, walking, sitting, postural movements (stooping, kneeling, crouching, crawling), and manipulative functions (reaching, handling, fingering, feeling). As urged by the Magistrate Judge, these limitations directly address the types of physical restrictions that would arise from widespread pain, fatigue, and joint issues characteristic of fibromyalgia.

*Gage v. Comm'r, Soc. Sec. Admin.*, No. 5:24-CV-108-RWS-JBB, 2025 WL 2784871, at *7 (E.D. Tex. Sept. 30, 2025) (citations omitted).

Similarly, here, the ALJ's RFC determination accounted for limitations due to fatigue and pain that could be caused by Plaintiff's fibromyalgia. *See, e.g.*, Dkt. No. 10-1 at 25 ("In terms of the claimant's physical impairments, the longitudinal

evidence of record supports a finding that she would be limited to light exertion with some additional postural, reaching, and environmental restrictions because while she could reasonably be expected to experience some fatigue, pain, and decreased movability due to fibromyalgia, hypertension, and body habitus, the record shows intact physical function overall. Although the claimant has alleged that she has even greater limitations, those allegations are not consistent with the overall evidence of record, including findings on examination and treatment sought and provided.").

And, so, this case materially differs from *Arakas*, the Fourth Circuit decision that Plaintiff cites.

There, the Court of Appeals reversed where, in determining the RFC, the ALJ's "opinion indicate[d] that the lack of objective medical evidence was his chief, if not definitive, reason for discounting Arakas's complaints," 983 F.3d at 97 (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("[T]he nature of fibromyalgia itself renders ... overemphasis upon objective findings inappropriate.")) – thus "join[ing]" "a growing number of circuits" "by holding that ALJs may not rely on objective medical evidence (or the lack thereof) – even as just one of multiple factors – to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence," *id.*

"An 'ALJ is responsible for determining an applicant's residual functional capacity.'" *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *accord Garrett R. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-829-D-BK, 2023 WL 5418301, at *3 (N.D. Tex. July 20, 2023)

("The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence." (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam))), *rec. adopted*, 2023 WL 5415283 (N.D. Tex. Aug. 22, 2023).

> In doing so, the ALJ "examines the medical evidence in the record, including the testimony of physicians and the claimant's medical records." "Notably, though, ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past." Instead, an ALJ considers a list of factors articulated in 20 C.F.R. § 404.1520c to decide "what weight, if any, to give to a medical opinion."

*Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (per curiam) (quoting *Webster*, 19 F.4th at 718).

> [And t]he RFC determination is a "combined medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources.

*Hess v. Kijakazi*, Civ. A. No. 22-5305, 2023 WL 8696374, at *8 (E.D. La. Oct. 20, 2023) (footnotes omitted), *rec. adopted*, 2024 WL 1231327 (E.D. La. Mar. 22, 2024).

Under this authority, Plaintiff has not shown that the ALJ's consideration of Dr. Reddy's opinions, to determine Plaintiff's RFC, amounts to reversible error where that RFC determination takes into consideration limitations that arise from pain and fatigue associated with Plaintiff's fibromyalgia, particularly considering that the treating physician rule no longer applies and that *Arakas* was decided in a world where that rule was still alive and kicking. *See, e.g.*, 983 F.3d at 107 ("While [the ALJ] reasoned that the 'lack of substantial support from the other objective evidence

of record' rendered Dr. Harper's opinion 'less persuasive,' the law makes it clear that such support is not necessary for according controlling or great weight to a treating physician's opinion. Rather, the opinion must be given controlling weight unless it is based on medically unacceptable clinical or laboratory diagnostic techniques or is contradicted by the other substantial evidence in the record." (cleaned up)).

Plaintiff's next argues that "the ALJ committed legal error when he found a severe impairment [but] then failed to accommodate that severe impairment by limiting [Plaintiff's] ability to perform basic work-related activities in her RFC." *E.g.*, Dkt. No. 15 at 3 (citing Dkt. No. 11 at 5-8); *id.* at 4 (The ALJ found that Plaintiff "had a severe mental impairment marked by moderate limitations in concentrating, persisting, or maintaining pace (Tr. 18). This meant that [Plaintiff] had a severe mental impairment (Tr. 17). 20 C.F.R. § 404.1520a(d)(1), (2). A severe mental impairment by definition limits the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1522(a). Yet, here, the ALJ adopted no limitation on [Plaintiff's] ability to perform basic work-related activities in her RFC (Tr. 19-20). This is a legal error that requires remand for further proceedings.").

> [F]ederal regulations require the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. §§ 404.1520a, 416.920a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). For most mental impairment listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A and B or A and C of the adult mental

> disorders contained in the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(2), (c), 416.920a(b)(2), (c). "Paragraph B" contains four broad functional areas: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E. The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. §§ 404.1520a(e)(4), 416.920(a)(e)(4).
>
> After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder in the Listing. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

*Buescher v. Comm'r, Soc. Sec. Admin.*, No. 4:24-cv-538-BJ, 2025 WL 1931948, at *10-*11 (N.D. Tex. July 14, 2025) (footnotes omitted).

Plaintiff does not argue that this procedure was not followed here.

Instead, just as in *Buescher*, Plaintiff argues that, "because the ALJ found in the 'special technique' that she had moderate limitations in two of the 'paragraph B' functional areas and, thus, had a severe mental limitation at Step Two, the ALJ should have found a limitation in performing one of the basic work activities in the RFC determination." *Id.* at *11 (cleaned up).

That court then rejected this argument, relying on the several prior decisions "in this district that have considered Buescher's exact argument and found it unpersuasive." *Id.* (collecting cases).

And, here, just as in *Buescher*, "the ALJ properly discussed the evidence in the record in making his RFC determination, explained his reasoning for the RFC

determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into the RFC that the record most supported." *Id.* (citation omitted).

And the decision from the District of Colorado that Plaintiff cites in her reply brief, *K.L.J. v. Comm'r, Soc. Sec. Admin.*, 809 F. Supp. 3d 1301 (D. Colo. 2025), does not cause the undersigned to question prior authority from this district rejecting this argument (as explained in detail in *Buescher*). *Compare Cernoch v. Comm'r of Soc. Sec.*, No. 1:24-CV-1414-DAE, 2025 WL 3688732, at *2 (W.D. Tex. Dec. 18, 2025) (distinguishing that case from *K.L.J.*, where "the ALJ did not adequately explain how the plaintiff's specific limitations allowed her to perform 'simple but detailed work.' Here, though, as Judge Howell concluded, the ALJ did sufficiently explain why her findings regarding Plaintiff's mental impairment were not included in the RFC. And Judge Howell found that substantial evidence supported the ALJ's conclusions." (citations omitted)), *with* Dkt. No. 10-1 at 25, 27 (RFC determination) ("Regarding her mental impairments, the claimant has been diagnosed with depressive disorder, anxiety disorder, and panic disorder. She stated that she experiences anxiousness, is easily overwhelmed, has some difficulty dealing with others, and struggles with focus at times. Based on these symptoms, the claimant is limited to understanding, remembering, and carrying out detailed but not complex instructions and tasks. Additionally, she is restricted to jobs wherein she would only occasionally interact with the public, coworkers, and supervisors.... Considering her mental capacities, at initial review the DDS psychological consultants found that the claimant is able to

understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact appropriately with others, and respond to changes in a work setting. Upon reconsideration, the DDS psychological consultant found that the claimant has no more than mild limitations in the 'paragraph B' criteria and that her mental impairments are nonsevere. The undersigned concludes that these prior administrative findings at initial review are persuasive. These findings are supported by a thorough review of the evidence with citations and explanations for the claimant's limitations up to the date of evaluation. The psychological findings are also consistent with findings of the claimant's mental status upon objective examination which note some mood instability but generally normal cognitive function." (citations omitted)).

**Recommendation**

The hearing decision should be affirmed.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 20, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE